**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-25966-RAR**

**JOSE ALFREDO ROCHA VARGAS**,

Petitioner,

v.

**MIAMI FEDERAL DETENTION CENTER**,
*ROGER MORRIS, in his official capacity*
*as Acting Warden*, *et al.*,

Respondents.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This case presents an issue currently dividing lower courts throughout the country:  whether detained aliens are subject to mandatory detention under 8 U.S.C. § 1225 or eligible for a bond hearing under 8 U.S.C. § 1226.  Given the current administration's commitment to stringently enforcing this nation's immigration laws, an increasing number of aliens present in the United States are finding themselves subject to mandatory detention.  Presently before the Court is Petitioner Jose Alfredo Rocha Vargas's Petition for Writ of Habeas Corpus ("Petition"), [ECF No. 1], filed on December 18, 2025, seeking relief from such detention.

The Court, having carefully analyzed competing interpretations of § 1225 and § 1226, concludes that the text of the statutory scheme does not require a bond hearing.  Accordingly, the Petition is **DENIED** for the reasons set forth herein**.**

## BACKGROUND

Petitioner Jose Alfredo Rocha Vargas is a Mexican citizen who has resided in the United States since 2002.  Pet.  ¶¶ 15, 42.  A father of four children, Petitioner has a criminal history that

consists of only "minor traffic citations, and . . . a battery charge from 2004 which [was] dismissed." Pet. ¶¶ 44–45.

In November 2025, Petitioner was arrested at a traffic stop and placed in immigration detention at Florida Soft-Sided Facility-South.  Pet.  ¶¶ 15, 43; Resp. at 3.  Following his arrest and detention, "ICE issued a custody determination to continue Petitioner's detention without an opportunity to post bond or be released on other conditions."  Pet. ¶ 47.  And, according to Petitioner, the "the immigration judge [was] unable to consider Petitioner's bond request" due to the Board of Immigration Appeals's decision in *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025).  Pet. ¶¶ 5, 32, 48.  There, the BIA held that immigration judges lack the authority to consider bond requests for any person who has resided in the United States but has not been admitted or paroled because those individuals are subject to detention under § 1225(b)(2)(A) and are therefore ineligible for a bond hearing. *Id*.

On December 10, 2025, U.S. Customs and Border Patrol initiated removal proceedings against Petitioner, and he was transferred to the Miami Federal Detention Center ("FDC Miami"). Resp. at 3; Ex. D, Detention History, [ECF No. 6-4].  To date, Petitioner remains in custody at FDC Miami. *Id*.

On December 18, 2025, Petitioner filed this action requesting that the Court (1) assume jurisdiction over this matter and order that Petitioner should not be transferred outside of the Southern District of Florida during the pendency of the Petition; (2) order Respondents to show cause as to why this Petition should not be granted within three days; (3) issue a Writ of Habeas Corpus requiring that Respondents release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a); and (4) declare Petitioner's detention to be unlawful. *See* Pet., Prayer for Relief.

On December 20, 2026, the Court issued an Order to Show Cause requiring Respondents "to show cause why the Petition should not be granted and [to] file all documents and transcripts necessary for resolution of the Petition" as well as "refrain from transferring Petitioner out of the jurisdiction of this Court during the pendency of this proceeding and while the Petitioner remains in the Respondents' custody." *See* Order to Show Cause, [ECF No. 4]. On December 23, 2026, Respondents filed a Response in Opposition to the Petition for Writ of Habeas Corpus ("Response"), [ECF No. 6]. Petitioner subsequently filed a Reply, [ECF No. 7]. Accordingly, the Petition is fully briefed and ripe for review.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Prieser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Section 2241 authorizes federal courts to hear challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (noting that "28 U.S.C. § 2241[ ] confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention").

## ANALYSIS

Petitioner maintains that he is not subject to § 1225(b)(2), and therefore his continued detention violates the Immigration Nationality Act ("INA") and 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. Pet. ¶¶ 50–56. He also asserts that his detention "without a bond redetermination

hearing . . . violates his right to due process." Pet. ¶ 61. Accordingly, there are two questions before the Court: (1) whether Petitioner is properly detained pursuant to § 1225(b)(2); and (2) whether Petitioner's mandatory detention is consistent with the Due Process Clause. The Court addresses each question in turn.[1]

### I. Petitioner is properly detained pursuant to § 1225(b)(2) and is therefore not entitled to a bond hearing.

Respondents maintain that Petitioner's detention is lawful pursuant to § 1225(b)(2). Specifically, Respondents contend that under the plain language of the statute, "the Government is required to detain all aliens, like Petitioner, who are present in the United States without admission and are subject to removal proceedings—regardless of how long the alien has been in the United States or how far from the border they ventured." Resp. at 4. Petitioner, however, counters that he is detained pursuant to 8 U.S.C. § 1226(a), and that "[i]ndividuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention[.]" Reply at 2. According to Petitioner, because "he has been present in the United States for nearly 23 years before his apprehension by ICE, [] 'his detention is governed by 8 U.S.C. § 1226(a), which allows

---

[1] While the parties do not raise the issue of jurisdiction, "a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)). While there are certain jurisdiction stripping provisions that may preclude judicial review such as § 1252(g) and § 1252(b)(9), the Court's independent review of the record reveals that none are applicable here. *See, e.g., Gomez-Pena v. Sec'y, Dep't of Homeland Sec.*, No. 3:25-cv-1287, 2026 WL 83980, at *2–3 (M.D. Fla. Jan. 12, 2026) (finding that petitioner's claims are not barred by 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) because petitioner is not attacking "ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal" nor is he "seeking to challenge the decision to seek removal or the process by which removability will be determined"); *Boffill v. Field Off. Dir.*, No. 25-25179, 2025 WL 3246868, at *2–4 (S.D. Fla. Nov. 20, 2025) (same). Accordingly, "[t]he question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction." *Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-20217, 2026 WL 496726, at *3 (S.D. Fla. Feb. 23, 2026).

for the release of noncitizens on bond,' . . . not § 1225(b)(2), [which is] applicable to noncitizen 'applicant[s] for admission' to the United States."  Reply at 3 (internal citation omitted).

Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), an "alien[] treated as an applicant[] for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . )[.]"  8 U.S.C. § 1225(a)(1).  And "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  *Id*. § 1225(b)(2)(A).  While § 1225(b)(2)(A) does not, under any circumstances, permit the Government to release detained aliens on bond, under § 1226 "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . [and] the Attorney General . . .[] may release the alien on [] bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General[.]"  *Id*. § 1226(a).  Accordingly, the resolution of the Petition turns on the question of whether an alien who enters the United States without inspection and who has been physically present and living in the United States for a number of years is subject to mandatory detention under § 1225(b)(2)(A), without access to a bond hearing, or § 1226(a), which requires an individualized bond hearing.

The Petition thus "presents a question of statutory interpretation of the Immigration and Nationality Act ('INA') that has divided district judges across the country[.]"  *Chen v. Almodovar*, No. 25 CIV. 9670 (JPC), 2026 WL 100761, at *1 (S.D.N.Y. Jan. 14, 2026) (Cronan, J.) (finding noncitizen was detained pursuant to § 1225(b)(2)(A) and thus ineligible for a bond hearing); *Candido v. Bondi*, No. 25-CV-867 (JLS), 2025 WL 3484932 (W.D.N.Y. Dec. 4, 2025) (Sinatra,

J.) (same); *Rodriguez v. Olson*, No. 1:25-CV-12961, 2026 WL 63613 (N.D. Ill. Jan. 8, 2026) (Pacold, J.) (same); *Ayala v. Harper*, No. 1:26-CV-204-CLM-GMB, 2026 WL 501113 (N.D. Ala. Feb. 23, 2026) (Maze, J.) (same); *Guzman-Diaz v. Noem*, No. 3:25-CV-3008-X-BN, 2026 WL 309938 (N.D. Tex. Feb. 5, 2026) (Starr, J.) (same); *Alvarez-Felix v. Ramos*, No. CV 26-1041 (RAM), 2026 WL 438160 (D.P.R. Feb. 17, 2026) (Arias-Marxuach, J.) (same); *but see, e.g., Sarmiento Guerrero v. Noem*, No. 25-CV-5881 (EK), 2025 WL 3214787, at *7 (E.D.N.Y. Nov. 18, 2025) (Komitee, J.) (finding noncitizen detained pursuant to § 1226(a) and thus entitled to a bond hearing); *Alvarez v. Noem*, No. 3:26-CV-73, 2026 WL 545382 (W.D. Pa. Feb. 26, 2026) (Ranjan, J.) (same); *Kashranov v. Jamison*, No. 2:25-CV-05555-JDW, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025) (Wolson, J.) (same).

Courts in this District are equally divided on this question. *See, e.g., Morales v. Noem*, No. 25-62598, 2026 WL 236307, at *8 (S.D. Fla. Jan. 29, 2026) (Singhal, J.) (finding petitioner is an "'applicant for admission' governed by section 1225" and rejecting petitioner's "argument that he categorically falls outside of section 1225's scope[.]"); *Mokanu v. Warden Miami Fed. Det. Ctr.*, No. 25-24121, 2026 WL 472294 (S.D. Fla. Feb. 19, 2026) (Artau, J.) (same); *Hernandez v. Miami Field Off. Dir.*, No. 26-20440, 2026 WL 554694 (S.D. Fla. Feb. 27, 2026) (Altman, J.) (same); *but see, e.g., Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535, 2025 WL 2938369, at *5 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.) (finding that "section 1226(a) and its implementing regulations govern Petitioner's detention, not section 1225(b)(2)(A) [and that] Petitioner is entitled to an individualized bond hearing as a detainee under section 1226(a)."); *Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-20217, 2026 WL 496726 (S.D. Fla. Feb. 23, 2026) (Becerra, J.) (same); *Castro v. Parra*, No. 26-20422, 2026 WL 788019 (S.D. Fla. Mar. 20, 2026) (Bloom, J.) (same).

While for some time, this question had "yet to be definitively resolved by any circuit court," *see Chen*, 2026 WL 100761, at *7, the Fifth and Eighth Circuits have recently considered the very question presented by the Petition, and have concluded that aliens like Petitioner are detained pursuant to § 1225(b)(2)(A).[2] *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) (finding that 8 U.S.C. § 1226(a) does not apply to petitioners, given that "[t]he text and context of § 1225 contradict the petitioners' reading of the statute."); *Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *6 (8th Cir. Mar. 25, 2026) ("[T]he district court erred in holding that the Government could not detain [petitioner] without bond under § 1225(b)(2)(A) and in granting habeas relief on that basis.").

Petitioner contends that § 1225(b) is inapplicable because it "applies to people arriving at U.S. ports of entry or who recently entered the United States." Reply at 2. According to Petitioner, "[t]he statute is built around the idea that these individuals are subject to border inspections because they are 'seeking admission' to the United States." *Id*. Thus, "it makes little sense to apply § 1225 to someone who has been living inside the United States for more than 22 years, as Petitioner has, because such an individual is no longer in the posture of an arriving applicant for admission." *Id*. Without providing further analysis, Petitioner then cites to a number of "courts throughout the country that [have found that] Respondents' interpretation of the INA [] expand[s] the scope of 8 U.S.C. § 1225 detention, directly contravenes the statute, disregards decades of

---

[2]   The Seventh Circuit discussed this question of statutory interpretation in the context of an order enjoining the Department of Homeland Security from making warrantless arrests of noncitizens, which is *not* the issue before this Court. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–61 (7th Cir. 2025).  The Seventh Circuit noted that "Plaintiffs have the better argument on the current record" as to the question of "whether § 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders[.]" *Id.* at 1061.

While the Eleventh Circuit has not yet weighed in on this question, it is currently under advisement; indeed, oral argument was held on March 26, 2026. *See* Oral Argument, *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, et al.*, Case No. 25-14065 (11th Cir. Mar. 26, 2026), ECF No. 68.

settled precedent, and is erroneous." *Id*. at 3 (citations and internal quotations omitted). But while "longstanding practice . . . can inform a court's determination of what the law is" it "does not justify a rule that denies statutory text its fairest reading." *Chen*, 2026 WL 100761, at *13 (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) and *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015)). Accordingly, a fulsome analysis of the text and purpose of the competing statutory provisions is warranted. And, while "[b]oth sides present plausible readings of the statutory text[,]" *Alvarez*, 2026 WL 545382, at *2, the Court concludes that the Government's position presents the more compelling interpretation.

Under § 1225(b)(2)(A), an alien can be detained without bond if he is "an applicant for admission" and "if the examining immigration officer determines that [the] alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Petitioner maintains that he is neither "in the posture of an arriving applicant for admission" nor "seeking admission[.]" Reply at 2. The Court disagrees.

*First*, Petitioner is properly considered an applicant for admission under § 1225(a)(1). An alien is "deemed for purposes of this chapter an applicant for admission" where they are "present in the United States [and] ha[ve] not been admitted or [have] arrive[d] in the United States (whether or not at a designated port of arrival . . . )". 8 U.S.C. § 1225(a)(1). "As with any question of statutory interpretation, [the Court's] analysis begins with the plain language of the statute." *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009); *see also BellSouth Telecomm'ns, Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1187 (11th Cir. 2001) ("When interpreting a statute, 'it is axiomatic that a court must begin with the plain language of the statute.'" (quoting *United States v. Prather*, 205 F.3d 1265, 1269 (11th Cir. 2000)). Here, the plain language suggests that Petitioner is an applicant for admission because he is currently present in the United States and has not yet been

lawfully admitted.  Accordingly, because "[p]resence without admission deems [] petitioners to be applicants for admission[,]" Petitioner falls squarely within the definition of "applicant" for purposes of § 1225(a)(1).  *Buenrostro-Mendez*, 166 F.4th at 502.

*Second*, the Court finds that Petitioner is seeking admission pursuant to § 1225(b)(2)(A). This presents a more complicated question of statutory interpretation, requiring an analysis of whether the terms *applicant for admission* and *seeking admission* are synonymous in nature.  A number of courts have read the term *seeking admission* to apply to only a subset of applicants for admission—not to <u>all</u> *applicants for admission*.  *See Kashranov*, 2025 WL 3188399, at *6 ("While [petitioner] is an applicant for admission, he is not seeking admission.  He's already here.").  But the Fifth and Eighth Circuits have, to the contrary, found that "an applicant for admission to the United States is 'seeking admission' to the same, regardless [of] whether the person actively engages in further affirmative acts to gain admission."  *Buenrostro-Mendez*, 166 F.4th at 502; *see also Avila*, 2026 WL 819258, at *3 ("[T]he structure of § 1225(b)(2)(A) does not indicate that 'seeking admission' is a separate requirement for detention under the statute.").  This Court's independent review of the plain meaning of the statute and its application of the canons of construction compels the same result.

"In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself.  Where, as here, that examination yields a clear answer, judges must stop."  *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) (citation omitted).  It is uncontroverted that the plain meaning of the terms *applicant for admission* and *seeking admission* is the same.  *See Avila*, 2026 WL 819258, at *3.  Indeed, "[w]hen a person applies for something, they are necessarily seeking it."  *Buenrostro-Mendez*, 166 F.4th at 502 (comparing the formal definitions of the terms "to apply" and "to seek");

*see also Candido*, 2025 WL 3484932, at *3 (explaining that "'applicant' and 'seeker' are, indeed, accepted synonyms" and because "there is no 'material variation' in meaning between these two terms[] there is no reason to apply interpretive canons").

Some courts have interpreted *seeking* to require present, affirmative action. *See, e.g., Kashranov*, 2025 WL 3188399, at *6 ("The phrase 'seeking admission' functions as a present participial modifier of the term 'alien' within the statute. . . . The present participle, expressed in the progressive '-ing' form, conveys ongoing and continuous action rather than a completed or static state."). However, to read *seeking admission* to apply only to those physically at the border ignores the complex realities of the United States immigration process. To gain legal admission into the United States is a lengthy, multifaceted procedure, requiring aliens like Petitioner to apply for admission, continuously supplement their application, and sit for multiple rounds of interviews. Therefore, it is an artificial construct to view those *seeking admission* as only the subset of applicants at the entry point to the United States.

A common rebuttal is that by interpreting *applicant for admission* as equivalent to *seeking admission*, the phrase *seeking admission* is rendered superfluous. *See, e.g., Castro*, 2026 WL 788019, at *5 ("Respondents' understanding would make 'applicants for admission' and 'seeking admission' effectively synonymous. This, as many courts have observed, would render the phrase 'seeking admission' superfluous." (internal quotations and citations omitted)). But as the Eighth Circuit reasoned, "[s]ince the structure of the text does not indicate that this phrase has standalone meaning, merely using it as a synonym for something else does not make it surplusage." *Avila*, 2026 WL 819258, at *4. And Congress could have clearly ascribed independent meaning to *seeking admission* had it said "if the examining immigration officer determines that an alien [*is*]

seeking admission [*and*] is not clearly . . . entitled to be admitted." *Id*. at *3.  But Congress did not do so. [3]

As the Fifth Circuit explained, "the Supreme Court has observed that 'redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication.'" *Buenrostro-Mendez*, 166 F.4th at 503 (quoting *Barton*, 590 U.S. at 239).  And there is "no canon of interpretation that forbids interpreting different words used in different parts of the same statute to mean roughly the same thing." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) (internal quotations omitted).

---

[3] An additional argument grounded in superfluity is that the Government's interpretation renders portions of § 1226 superfluous.  Because § 1226(c)—as amended by the Laken Riley Act in 2025—expressly requires detention without bond for aliens who commit certain criminal offenses, certain courts have posited that it would be superfluous if the same aliens could already be detained without bond pursuant to § 1225(b)(2)(A).  8 U.S.C. § 1226(c)(1)(E); *see Avila*, 2026 WL 819258, at *5; *Buenrostro-Mendez*, 166 F.4th at 505.  In its Response, the Government argues that while the Laken Riley Act "adds some overlap between aliens subject to detention under § 1225(b)(2) and § 1226(c), that overlap does not apply to Petitioner, and . . . it does not create a redundancy as the amendment does independent work."  Resp. at 10.  The Court agrees.

As the Eighth Circuit explained, "§ 1226(c) applies both to aliens who have not yet been admitted—i.e., 'applicants for admission'—as well as those who were previously admitted but have lost their legal status since—such as aliens who have overstayed their visas." *Avila*, 2026 WL 819258, at *5.  Thus, § 1226(c) is simply broader insofar as it covers both deportable aliens who have already been admitted and some inadmissible aliens who are also covered by § 1225(b)(2)(A).  *See Buenrostro-Mendez*, 166 F.4th at 505.  And § 1226(c) does independent work by eliminating the option of parole for those it covers.  *Id*. at 504–505.

Further, the existence of a purported statutory redundancy is not a "license to rewrite or eviscerate another portion of the statute contrary to its text[.]"  *Barton v. Barr*, 590 U.S. 222, 239 (2020).  Put simply, the Laken Riley Act *can* and *does* overlap with § 1225(b)(2)(A), and an alien can simultaneously fall under both statutory provisions.  While that is not the case here as Petitioner is not covered by § 1226(c), an alien can be doubly covered without rendering § 1226(c) superfluous.  Section 1226(c) applies to a broader swath of aliens—encompassing both applicants for admission and previously admitted aliens—and provides detention without bond *or* parole.  Thus, the overlap between provisions can be explained by Congress's desire to be "doubly sure" that certain criminal aliens are detained without bond or parole— even if *some* of them could already be detained without bond pursuant to § 1225(b)(2)(A).  *Barton*, 590 U.S. at 239.

In the absence of any statutory text suggesting otherwise, it does not appear that Congress intended to ascribe independent meaning to the phrase *seeking admission*. While Congress could have said the same thing with fewer words—such as by replacing "an alien seeking admission" with "that alien"—the inclusion of additional language does not imply that the words must carry a separate meaning. *See Rodriguez*, 2026 WL 63613, at *7 (explaining that "while §§ 1225 and 1226 overlap, even 'substantial' overlap does not create superfluity. Contextually, § 1225(b)(2) is specific while § 1226 is general. And in such situations, the specific provision does not invalidate or render superfluous the general provision." (internal citations omitted)).

Moreover, even if the Court were to find *seeking admission* to be different from *applicant for admission* because the latter is a term of art defined in § 1225(a)(1), the result would be no different. Upon employing the traditional tools of statutory interpretation to determine the meaning of *seeking*, the Court is left with a term that functionally means the same thing as *applying*. *See supra* at 9. Thus, someone who is *seeking admission* would also necessarily fall within the definition of *applicant for admission*.

This interpretation is further supported by the broader statutory context, as "Section 1225 itself expressly treats applicants for admission as among those seeking admission—indeed, it does so twice." *Chen*, 2026 WL 100761, at *9. Under § 1225(a)(5), "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant *in seeking admission* to the United States . . . ." 8 U.S.C. § 1225(a)(5) (emphasis added). Accordingly, this provision clearly refers to an applicant for admission as one who is seeking admission, making it unlikely that Congress intended to differentiate those *seeking admission* from *applicants for admission*. *See Buenrostro-Mendez*, 166

F.4th at 503 (noting that "Section 1225(a)(5) reinforces the same relationship between 'applicants for admission' and 'seeking admission'").

Additionally, § 1225(a)(3) provides that "[a]ll aliens (including alien crewmen) who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers."  8 U.S.C. § 1225(a)(3) (emphasis added).  The Fifth Circuit thus concluded that "[t]he use of 'or otherwise' suggests that 'applicants for admission' are a subset of those 'seeking admission.'"  *Buenrostro-Mendez*, 166 F.4th at 503 (citing *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963–64 (11th Cir. 2016)).  In other words, even if these two phrases refer to different groups of aliens, the category of aliens *seeking admission* would be *broader* than the category of those considered *applicants for admission*.  *Chen*, 2026 WL 100761, at \*9 (noting how "a noncitizen may be seeking admission to the United States while at a location abroad—and thus would not fall under the scope of 'applicant for admission' under Section 1225(a)(1).").  In sum, the Court agrees that consideration of both the plain meaning of the relevant statutory provision and the statute's broader context requires a finding that *applicant for admission* as defined in § 1225(a)(1) is tantamount to *seeking admission*.

*     *     *

While not raised by Petitioner, courts across the country have also addressed several arguments in support of Petitioner's position.  These arguments include congressional intent, the Government's longstanding practice, and the Supreme Court's opinion in *Jennings v. Rodriguez*.  Though these are persuasive arguments, they ultimately fail to tip the scales in Petitioner's favor in light of the textual analysis herein.

*First*, some have argued that it is "not plausible that the Congress that enacted IIRIRA intended to give the government the authority and mandate to detain all noncitizens unlawfully

present in the United States without bond . . . [which] would have required the detention of millions of people." *Buenrostro-Mendez*, 166 F.4th at 515 (Douglas, J. dissenting). Similarly, from IIRIRA's enactment in 1997 up to 2025, "[f]ive presidential administrations, including the first Trump administration, and most immigration judges interpreted § 1225 to apply only to those applying at the border." *Avila*, 2026 WL 819258, at *8 (Erickson, J. dissenting). But these arguments are unavailing.

*Second*, in terms of legislative intent, the Government's interpretation better aligns with IIRIRA's aims. Prior to IIRIRA's enactment, the INA distinguished between aliens who presented at the port of entry and those who evaded inspection—as aliens apprehended at ports of entry were detained without bond, while aliens who were apprehended in the country after evading inspection were bond eligible. *Buenrostro-Mendez*, 166 F.4th at 498–99. Under the prior scheme, the INA "afforded greater procedural and substantive rights to aliens who bypassed entry procedures," and IRRIRA "aimed to reduce this incongruity." *Id*. Thus, the Government's interpretation is more faithful to this goal as it places all unadmitted aliens on equal procedural footing. And although the Government's past practice treated unadmitted aliens apprehended in the country as subject to § 1226(a) rather than § 1225(b)(2), "[y]ears of consistent practice cannot vindicate an interpretation that is inconsistent with the statute's plain text." *Id*. at 506 (citing *Pereira v. Sessions*, 585 U.S. 198, 204 (2018)). Accordingly, this Court's interpretation adheres to the statutory text rather than any arguments sounding in past practice.

*Finally*, the Court must address the Supreme Court's opinion in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). Although a different issue was before the *Jennings* Court, it included the following passage in the opinion's background section:

> In sum, U.S. immigration law authorizes the Government to detain certain *aliens seeking admission* into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Id*. at 289 (emphasis added).  It is argued that this language, despite being dicta, reflects the Supreme Court's understanding that § 1225 applies to "aliens seeking admission" while § 1226 applies to "aliens in the country."  *See, e.g.*, *Alvarez*, 2026 WL 545382, at \*1 ("[W]hat ultimately tips the scale in favor of Petitioner's view is the structure of the statute as explained in dicta from the Supreme Court's decision in *Jennings* . . . .").  And "dicta from the Supreme Court is not something to be lightly cast aside."  *Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997); *see also Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("[T]here is dicta and then there is dicta, and then there is Supreme Court dicta.").

While the aforementioned passage from *Jennings* may suggest a binary distinction between "aliens seeking admission" and "aliens already in the country," it does not foreclose the possibility that these categories overlap.  *See Buenrostro-Mendez*, 166 F.4th at 505.  As such, an alien can be simultaneously "seeking admission" *and* "already in the country."  And elsewhere in *Jennings*, the Supreme Court explained that "§ 1225(b) applies primarily to *aliens seeking entry* into the United States ('*applicants for admission*' in the language of the statute)[,]" *Jennings*, 583 U.S. at 297 (emphasis added), suggesting that its interpretation of the statute may in fact comport with the Government's argument that applicants for admission are necessarily seeking admission.  Because such dicta cuts both ways, the Court declines to hang its hat on *Jennings* in reaching its conclusion.

## II.   Petitioner's detention does not violate due process.

Petitioner also argues that his detention violates due process.  Pet. ¶¶ 57–61.  Relying on the Supreme Court's opinion in *Zadvydas v. Davis*, Petitioner notes that "[c]ivil immigration

detention violates due process if it is not reasonably related to its statutory purpose." Pet. ¶ 59 (citing *Zadvydas*, 533 U.S. at 690). And Petitioner explains that the Supreme Court has recognized two justifications for immigration confinement—preventing flight and preventing danger to the community. *Id*. (citing *Zadvydas*, 533 U.S. at 690). As such, Petitioner alleges a due process violation arising from his continued detention "without a bond redetermination hearing to determine whether he is a flight risk or danger to others." Pet. ¶ 61.

While the Government did not respond to Petitioner's due process claim, the Court's independent review of the relevant law reveals that Petitioner has not identified a due process violation. In *Zadvydas*, the procedural posture of the case was entirely different, given that it involved a "post-removal-period detention statute." *See Zadvydas*, 533 U.S. at 683. Here, Petitioner has not alleged that he is in post-removal proceedings. And, even if he were, he has failed "to state a claim under *Zadvydas* [because he has not] show[n] post-removal order detention in excess of six months [nor has he] provide[d] evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

In *Demore v. Kim*, the Supreme Court addressed the constitutionality of the "detention of deportable criminal aliens *pending their removal proceedings*"—the procedural posture at issue here. 538 U.S. 510, 527 (2003) (emphasis in original). Finding "[d]etention during removal proceedings [to be] a constitutionally permissible part of that process," the Court considered and concluded that individuals like Petitioner could be detained without any finding as to whether they posed a flight risk or danger to society. *Id*. at 524–25. Further, "given the relatively short duration of [Petitioner's] detention—[approximately four months]—any constitutional argument for habeas relief separate from the statutory one raised here, *if possible*,

would be premature." *Chen*, 2026 WL 100761, at *14 (internal quotations and citations omitted). Accordingly, Petitioner's detention comports with due process.

*     *     *

"[B]ased on social policy and other considerations, reasonable minds might make arguments against or in favor of mandatory detention of noncitizens present in the United States without having been admitted[.]" *Alvarez-Felix*, 2026 WL 438160, at *9 (internal quotations and citations omitted). Indeed, there are those who would characterize the interpretation advanced by the Government and its application of §§ 1225 and 1226 as facilitating a policy of mass detention. But it is not for the courts to second-guess the wisdom of this policy. Because "[the Court's] role is to apply the law, not rewrite it[,]" *see Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 64 (2024), it is the Court's obligation to determine only whether the application of §§ 1225 and 1226 falls within statutory and constitutional bounds.

That said, the Court is not blind to the humanitarian concerns raised by the Government's approach, which forecloses the opportunity for immigrants awaiting admission to obtain a bond—immigrants in many instances who, like Petitioner, have little to no criminal history and have resided in this country for decades. And there is little question that prior administrations have treated immigrants like Plaintiff eligible for bond hearings. But the Court also affords considerable weight to the two Circuit Courts of Appeal that have agreed with the undersigned's position. *See Buenrostro-Mendez*, 166 F.4th at 502; *Avila*, 2026 WL 819258, at *3; *see also Bostock v. Lynch*, No. 16-22279, 2017 WL 7794355, at *2 (S.D. Fla. Sept. 20, 2017) ("The Court sees no error in looking to other circuits when examining a legal issue and notes . . . that every circuit to consider this issue has come to the same conclusion. This precedent, though not binding, is highly persuasive."). Once the Eleventh Circuit speaks on this issue, the Court will be bound by its

holding.  In the interim, however, this issue presents a close call—one that appears destined for resolution by the Supreme Court.  Ultimately, the mere fact that the current administration has elected to ardently enforce our nation's immigration laws does not automatically render its application of §§ 1225 and 1226 improper.  And this Court's fealty to the statutory text compels the reading set forth herein.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      Petitioner Jose Alfredo Rocha Vargas's Petition for Writ of Habeas Corpus, [ECF No. 1], is **DENIED**.

2.      All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot.

3.      The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 2nd day of April, 2026.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**